UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DAISY THORNTON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION FILE |
| v. ) | |
| ) | |
| **AEROTEK, INC. and McWANE, INC.** ) | Jury Trial Demand |
| **d/b/a TYLER UNION,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

# COMPLAINT

1. This action for injunctive relief, compensatory and punitive damages, costs and attorneys' fees is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. and the Civil Rights Act of 1991 ("Title VII") to redress harassment of Plaintiff based on her sex in connection with her employment and retaliation against her. Plaintiff also brings claim under the laws of the State of Georgia for the tort of intentional infliction of emotional distress.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction of this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a) (4). This Court has supplemental jurisdiction over

Plaintiff's state claim pursuant to 28 U.S.C. § 1367 because the claim is so related to Plaintiff's Title VII claim that they form a part of the same case or controversy.

3. Venue is proper in this Court under 28 U.S.C. § 1391 because this is a judicial district in which the Defendants reside and in which a substantial part of the events and omissions giving rise to the claims occurred. Venue is also proper in this Court because the acts and practices complained of by Plaintiff occurred in this district and division.

## PARTIES

4. Plaintiff **Daisy Thornton** is a 28-year-old female resident of Cobb County, Georgia who was jointly employed by Aerotek, Inc., a staffing company, and its client McWane, Inc. during August 2019 as a forklift driver at McWane, Inc.'s Tyler Union warehousing operation located at 850 Douglas Hill, Lithia Springs, Georgia 50122. Plaintiff was an employee of Defendants under Title VII.

5. Defendant **Aerotek, Inc.** (hereinafter "Aerotek") is a foreign profit corporation authorized to transact business in Georgia that operates various staffing or employment offices in the Atlanta metropolitan area. Aerotek's registered agent is Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners,

Georgia 30092.  Aerotek is an employer as that term is defined in Title VII, 42 U.S.C. § 2000e(b).

6.   Defendant **McWane, Inc. d/b/a Tyler Union** is a foreign profit corporation authorized to transact business in Georgia, with its registered agent April Pearson, 850 Douglas Hill, Lithia Springs, Georgia.  McWane, Inc. operates a warehouse facility at 850 Douglas Hill, Lithia Springs, Georgia 50122 that does business as Tyler-Union, a division of McWane, Inc. **McWane, Inc. d/b/a Tyler Union** (hereinafter "Tyler Union") is an employer as that term is defined in Title VII, 42 U.S.C. § 2000e(b).

## CONDITIONS PRECEDENT

7.   Plaintiff has fulfilled all conditions precedent to institution of this action. She timely filed charges against both Defendants with the Equal Employment Opportunity Commission and is filing this Complaint within ninety (90) days after receiving a Notice of Right to Sue.

## STATEMENT OF FACTS

## PLAINTIFF'S EMPLOYMENT BY AEROTEK AND TYLER UNION

8. Plaintiff worked successfully as an employee of Defendant Aerotek, a staffing agency, at two different customers prior to working for Aerotek at Defendant Tyler Union.

9. Aerotek paid Plaintiff wages for of all work that she performed for customers of Aerotek.

10. The employment relationship between Plaintiff and Aerotek was reflected in the Employee Acknowledgement Form she was required to sign stating that Plaintiff had an employment relationship with Aerotek as a contract employee.

11. On or about 2017, Plaintiff worked for a period of almost one year as an employee of Aerotek assigned to a forklift driver position with a customer of Aerotek.

12. Aerotek and Tyler Union were parties to an agreement pursuant to which Aerotek regularly supplied employees to Tyler Union. Aerotek and Tyler Union each maintained the right to exercise control over such employees and were joint employers of the employees.

13. On August 14, 2019, Aerotek Recruiter Adetowo Oni advised Plaintiff that she should report to a job assignment as a general warehouse employee at Tyler Union's distribution center.

14. Plaintiff reported to Tyler Union on August 15, 2019, where she was interviewed for a position by Supervisor Eddie Wynn and Felicia Martin, shipping lead person. Plaintiff submitted to a test to determine her skills as a forklift driver by actually performing a task as driver. Following the interview, Plaintiff was hired by Tyler Union as a forklift driver.

15. Plaintiff was required by Aerotek's contract employee handbook to abide by all rules of conduct established by any Aerotek client customer, such as Tyler Union, where Plaintiff would be assigned to work.

16. Upon reporting to work at Tyler-Union, Plaintiff attended an employee orientation where she signed various documents setting out the employment relationship with Defendant Tyler Union, and she was informed of Tyler Union expectations.

17. Plaintiff performed assignments as a forklift driver and was advised by Tyler Union representatives that she had done a good job on the assignments.

## THE SEXUAL HARASSMENT OF PLAINTIFF

18. On Plaintiff's first day of work, Tyler Union Supervisor Eddie Wynn introduced Plaintiff to employee Cedric Stone, explaining that Stone would give Plaintiff a tour of the distribution center and train her regarding forklift duties.

19. Almost immediately Cedric Stone commenced a pattern of severe sexual harassment against Plaintiff. The harassment included, but was not limited to, inquiring as to whether Plaintiff had a boyfriend, making inappropriate comments regarding Plaintiff's genital area, encouraging her to engage in sexual activity at his home allegedly located nearby, grabbing Plaintiff's breast, telling Plaintiff that he could get her into a good job but "you got to give me something," and other sexually inappropriate comments.

20. Cedric Stone told Plaintiff that he was related to Supervisor Eddie Wynn and that if she did what Stone told her, Plaintiff could keep the job and advance in Tyler Union.

21. From the outset of Cedric Stone's sexual harassment, Plaintiff directly informed Stone that she did not appreciate the offensive verbal and physical advances, wanted the advances and behavior to cease, and did not wish to engage in the sexual relationship sought by Stone.

6

22. On information and belief, Defendant Tyler Union was aware of Cedric Stone's offensive conduct toward other female employees but took no steps to prevent the sexual harassment of Plaintiff when Stone was assigned to be her job trainer.

23. After Plaintiff's complaints of sexual harassment, Tyler Union assigned another employee to complete the training of Plaintiff, but despite the complaints took no steps to ensure that Plaintiff would be protected from any contact with Stone. As a result, Stone approached Plaintiff on August 16, 2019 while she was on a forklift and called her a bitch because she reported the harassment.

### PLAINTIFF'S REPORTS OF THE SEXUAL HARASSMENT TO AEROTEK AND TYLER UNION

24. On the day the sexual harassment occurred, August 15, 2019, as required by the Aerotek Employee Handbook, Plaintiff reported the sexual harassment to her recruiter Adetowo Oni.

25. During several telephone conversations with Mr. Oni, Plaintiff reported that the Tyler Union employee training her had engaged in sexually inappropriate conduct during the course of training her for the warehouse position. Mr. Oni advised Plaintiff that he was reluctant to get involved in the situation at Tyler Union because the company was an important client in his recruiting business. He

7

counseled Plaintiff that she should "make it work in order to become a forklift driver."

26. Plaintiff also reported the sexual harassment to Tyler Union supervisor Eddie Wynn and lead employee Felicia Martin, who promised to assign Plaintiff to another employee for training.

27. As directed by Tyler Union, Plaintiff on August 16, 2019 prepared a written statement describing the harassment she had suffered from Cedric Stone. In the statement, Plaintiff also reported that Stone, observing that Plaintiff was being trained by a different individual, called her a bitch because she reported the harassment.

## DEFENDANTS' RETALIATION AGAINST PLAINTIFF

28. Defendants engaged in a joint investigation of the complaints of sexual harassment and made a mutual decision to discharge Plaintiff following her complaints.

29. Upon determining to discharge Plaintiff, Tyler Union retained Cedric Stone despite serious allegations of sexual harassment, including grabbing Plaintiff's breast, and despite the allegation that he called Plaintiff a bitch because she had reported him to management.

30. On August 17, 2019, the day after Plaintiff submitted her written statement describing the sexual harassment to which she had been subjected, Tyler Union Supervisor Eddie Wynn informed Plaintiff that her job assignment had been terminated because she "was not a good culture fit."

31. Later, in its Position Statement to the EEOC, Tyler Union shifted to and fabricated a false reason for Plaintiff's discharge, claiming that Cedric Stone reported that she had been heard using profanity, apparently the word "damn" and a disorderly tone while visitors were present in the warehouse.

32. Although the Aerotek Employee Handbook assured Plaintiff that she would be protected from discrimination and sexual harassment and despite Aerotek's knowledge of the sexual harassment and retaliation suffered by Plaintiff as a result of Tyler Union's conduct, Aerotek took no steps to correct the unlawful behavior of Tyler Union.

33. Defendants terminated Plaintiff's employment at Tyler Union for reasons that were false, contrived and a pretext to discharge her in retaliation for her complaints of sexual harassment.

34. On several occasions following the termination of Plaintiff's employment at Tyler Union, Plaintiff contacted representatives at Aerotek seeking another work assignment.

35. Aerotek refused to find a work assignment for Plaintiff at any of its other client customers following her complaint of harassment while employed at Tyler Union.

36. Aerotek's refusal to find a new work assignment for Plaintiff was in retaliation for her report of sexual harassment by its customer Tyler Union with which Aerotek had an important and profitable relationship.

37. Defendant Aerotek filed a separation notice on December 3, 2019 with the Georgia Department of Labor stating that Plaintiff's work assignment had ended on August 17, 2019.

38. Later, in its Position Statement to the EEOC, Aerotek shifted to and fabricated a false reason for terminating Plaintiff's assignment on August 17 by alleging that Tyler Union -- at which she had been placed three (3) days prior at Tyler Union's request for employees -- had a reduced need for temporary staffing and that Plaintiff was included among a group of five Aerotek contractors laid off because of a lack of work.

## ADDITIONAL FACTS

39. As a result of Defendants' harassment and retaliation, Plaintiff suffered severe emotional pain and suffering, mental anguish and a loss of enjoyment of life.

40. The emotional distress suffered by Plaintiff has included but was not limited to, fear, agitation, sleeplessness, frustration, anger, irritation, depression, despondency, anxiety attacks, panic attacks, nervousness, humiliation, degradation, feelings of helplessness, and lack of confidence.

41. Defendants acted willfully and with malice, wantonness, oppression, and/or reckless indifference to Plaintiff's federally protected rights and the consequences of its actions and failures to act.

## CAUSES OF ACTION

### COUNT I (Sexual Harassment in Violation of Title VII)

42. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 41 of this Complaint.

43. During Plaintiff's employment by Aerotek and Tyler Union she was subjected to unwelcome harassment based on her sex, including verbal and physical advances of a sexual nature, by Cedric Stone, an employee who relied on his

relationship with Supervisor Eddie Wynn and Wynn's ability to allow Plaintiff to keep her job and advance in Tyler Union to persuade Plaintiff to accede to his sexual harassment.

44. Plaintiff's employment was terminated because she refused to give into, and complained about, the sexual overtures of an employee with whom Supervisor Eddie Wynn had a relationship.

45. Defendants Aerotek and Tyler Union are liable to Plaintiff under Title VII as joint employers for this tangible employment action.

46. The harassment was sufficiently severe and/or pervasive to, and did, alter the terms and conditions of Plaintiff's employment and created a discriminatorily abusive working environment.

47. Defendants Aerotek and Tyler Union are liable because they had notice from Plaintiff's complaints of the sexual harassment and failed to take action to ensure that such offensive conduct would cease, and also because Tyler Union was aware of Stone's propensity to engage in offensive conduct and took no steps to prevent the sexual harassment of Plaintiff when Stone was assigned to be her job trainer.

48. Defendants Aerotek and Tyler Union are liable to Plaintiff under Title VII as joint employers for the sexual harassment of Plaintiff.

### COUNT II (Retaliation in Violation of Title VII))

49. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 48 of this Complaint.

50. Defendants knew of Plaintiff's complaints of sexual harassment and were involved in the decision to terminate Plaintiff's employment at Tyler Union.

51. The termination by Defendants of Plaintiff's employment at Tyler Union and the refusal by Aerotek to find Plaintiff another position was unjustified and done in retaliation for her complaints of sexual harassment while employed at Tyler Union.

52. Defendants Aerotek and Tyler Union are liable as joint employers to Plaintiff for retaliation in violation of Title VII.

### COUNT III (Intentional Infliction of Emotional Distress)

53. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 52 of this Complaint.

54. The retaliation against Plaintiff by Defendants was extreme and outrageous, undertaken intentionally, and caused Plaintiff severe emotional distress.

55. Defendants are liable to Plaintiff for intentional infliction of emotional distress because they deliberately set out to retaliate against her for the complaints of sexual harassment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

(a) Declare that the acts and practices complained of herein are in violation of Title VII;

(b) Enjoin the Defendants from engaging in such conduct in the future;

(c) Direct the Defendants to reinstate Plaintiff to a suitable position, or in the alternative, to pay Plaintiff her lost future earnings and other benefits;

(c) Direct Defendants to make Plaintiff whole for all earnings, including fringe benefits, that Plaintiff would have received but for her discharge and other violations of Title VII;

(e) Award to Plaintiff the maximum compensatory and punitive damages allowable under Title VII;

(f) Award to Plaintiff and against Defendants general, compensatory, and punitive damages under the laws of the State of Georgia for her claim of intentional

infliction of emotional distress in amounts to be determined at trial but not less than a total Five Hundred Thousand Dollars ($500,000);

(g) Award to Plaintiff and against Defendants her costs and attorneys' fees incurred in the prosecution of this action;

(h) Award to Plaintiff and against Defendants pre-judgment and post-judgment interest; and

(i) Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Respectfully submitted,

s/A. McArthur Irvin
A. McArthur Irvin
Georgia Bar No. 384300
Tel. 404.237.5075
mirvin@ibhslaw.com

s/ Sandra Kaye Bowen
Sandra Kaye Bowen
Georgia Bar No. 409315
Tel. 404.237.1033
sbowen@ibhslaw.com

IRVIN BOWEN LLC

1100 Peachtree Street
Suite 900
Atlanta, GA 30305
Tel. 404-237-6100
Fax. 404-237-1047

                        Counsel for Plaintiff